J-A28002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DARIUS L. BURKETT | |
| Appellant | No. 2485 EDA 2013 |

Appeal from the Judgment of Sentence July 31, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007685-2009

BEFORE:  GANTMAN, P.J., PANELLA, J., and SHOGAN, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED APRIL 14, 2016**

Appellant, Darius L. Burkett, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions of possession of marijuana, possession of offensive weapons ("POW"), possessing instruments of crime ("PIC"), and resisting arrest.[1]  We affirm.

The trial court summarized the relevant facts of this case as follows:

> Philadelphia Police Officer Edgar Ruth testified that on the evening of May 12, 2009, at approximately 10:55 [p.m.], he was on routine bicycle patrol, in uniform, with his partners, Officers Jones and Dillard.  As they approached Carroll Park, located on the 5800 block of Girard Ave., Officer Ruth observed [Appellant] sitting on a bench in the

---

[1] 35 P.S. § 780-113(a)(31); 18 Pa.C.S.A. §§ 908(a), 907(a), and 5104, respectively.

park drinking beer from a can. On approaching [Appellant], with the intent of issuing him a citation for drinking from an open container, Officer Ruth asked [Appellant] for identification. Officer Ruth searched [Appellant], without securing him, and removed from his left rear pocket a clear plastic sandwich bag, containing five smaller baggies all with marijuana.

When Officer Ruth pulled the bag out, [Appellant] "took off right over the bench and began running." Officer Ruth pursued [Appellant] on foot eventually trapping him in a blind alley with a large fence at the rear. On hearing a "crackling noise," Officer Ruth swung his ASP, knocking a "stun gun" out of [Appellant's] hand. By the time [Officer Ruth] stepped back and drew his gun, [Appellant] was "climbing the fence."

Philadelphia Police Officer Anthony Jones…further testified that on seeing [Appellant] flee from Officer Ruth, [Officer Jones] pursued [Appellant] on [Officer Jones'] bicycle and upon seeing [Appellant] enter an alley, Officer Jones went around to the front of the house backing on to the alley, where he heard "some rattling" and saw [Appellant] jumping onto the front porch of the house. Officer Jones then positioned his bicycle at the bottom of the porch steps in an effort to block [Appellant's] path. [Appellant] grabbed Officer Jones, pulling him off his bicycle and dragging him to the ground several feet away. After a brief struggle, Officer Jones was eventually able to subdue [Appellant] and place him in handcuffs. As a result of this struggle, Officer Jones received a number [of] injuries, some of which were treated by paramedics at a local firehouse and others he self treated at home.

[Appellant] testified that on the evening of May 12, 2009, he was drinking a can of beer when he was approached by three officers and was asked for "I.D." He further testified that after he was searched, he ran "because I knew I was going to jail. I had a detainer." He also testified that he ran through an alley and over two fences before encountering the second police officer in pursuit.

On cross examination, [Appellant] admitted that on the day he was arrested, he "was in the drug life" and had sold

> drugs that day for another individual. He testified that when he was searched, the police recovered $255.00 in cash representing his share of the drug proceeds for that day.

(Trial Court Opinion, filed March 28, 2014, at 4-6) (citations to record omitted). Appellant was subsequently charged with possession of marijuana, POW, PIC, resisting arrest, and aggravated assault.

On October 1, 2012, Appellant filed a motion to dismiss pursuant to Pa.R.Crim.P. 600. The court conducted a hearing on January 15, 2013, and denied Appellant's motion. Thereafter, Appellant filed a motion to proceed *pro se*, which the court granted following a ***Grazier***[2] hearing on June 10, 2013. That same day, Appellant's jury trial began with Appellant proceeding *pro se* with standby counsel. A jury convicted Appellant on June 12, 2013, of possession of marijuana, POW, PIC, and resisting arrest. Appellant proceeded to sentencing *pro se* with standby counsel, and on July 31, 2013, the court sentenced Appellant to an aggregate term of four to eight years' imprisonment. The court subsequently appointed counsel to represent Appellant for post-sentence and appeal purposes. Counsel timely filed a post-sentence motion, while Appellant filed a *pro se* post-sentence motion on August 9, 2013. The court denied Appellant's *pro se* motion on August 19, 2013.

Appellant filed a premature notice of appeal *pro se* on August 21,

---

[2] ***Commonwealth v. Grazier***, 552 Pa. 9, 713 A.2d 81 (1998).

2013. The court ordered Appellant on August 30, 2013, to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied on September 19, 2013. That same day, Appellant requested an extension of time to file a supplemental Rule 1925(b) statement, which the court granted.

The court subsequently conducted a hearing on Appellant's counseled post-sentence motion on October 23, 2013. Following the hearing, the court denied the motion.[3] On June 16, 2014, Appellant filed in this Court a motion

_____

[3] As a general rule, this Court has jurisdiction only over final orders. **Commonwealth v. Rojas**, 874 A.2d 638 (Pa.Super. 2005). "A direct appeal in a criminal proceeding lies from the judgment of sentence." **Commonwealth v. Patterson**, 940 A.2d 493, 497 (Pa.Super. 2007), *appeal denied*, 599 Pa. 691, 960 A.2d 838 (2008). If a defendant in a criminal case files a timely post-sentence motion, the judgment of sentence does not become final for the purposes of an appeal until the trial court disposes of the motions or the motions are denied by operation of law. **Commonwealth v. Borrero**, 692 A.2d 158, 160 (Pa.Super. 1997). The denial of a timely post-sentence motion becomes the triggering event for filing a notice of appeal. Pa.R.Crim.P. 720(A)(2). Generally, where a defendant timely files a post-sentence motion, the court shall decide the motion within 120 days of the filing; otherwise, the motion shall be deemed denied by operation of law. **See** Pa.R.Crim.P. 720(B)(3)(a). When an appellant files a notice of appeal before the court has ruled on his post-sentence motions, the judgment of sentence has not become "final," and any purported appeal will be interlocutory and unreviewable. **Borrero, supra**. In those circumstances, the proper remedy is to quash the appeal, relinquish jurisdiction, and remand for the trial court to consider the post-sentence motions *nunc pro tunc*. **Id.** at 161. Nevertheless, if the court subsequently denies an appellant's post-sentence motions, "[this Court] will treat [an] appellant's premature notice of appeal as having been filed after entry of [an] order denying post-sentence motions." **See Commonwealth v. Ratushny**, 17 A.3d 1269, 1271 n. 4 (Pa.Super. 2011). Instantly, the court sentenced Appellant on July 31, 2013, and Appellant's counsel timely
*(Footnote Continued Next Page)*

to vacate the briefing schedule and remand for completion of the record due to missing transcripts and notes of testimony. This Court granted Appellant's motion on July 14, 2014, and gave Appellant the opportunity to file a supplemental Rule 1925(b) statement, which Appellant filed on September 17, 2014.

Appellant raises the following issues for our review:

> DID NOT THE [TRIAL] COURT VIOLATE APPELLANT'S CONSTITUTIONAL RIGHTS AND THE RULES OF CRIMINAL PROCEDURE BY PERMITTING APPELLANT TO REPRESENT HIMSELF AT A JURY TRIAL AND SENTENCING ABSENT A KNOWING AND INTELLIGENT WAIVER OF THE RIGHT TO COUNSEL?

> DID NOT THE [TRIAL] COURT ABUSE ITS DISCRETION, VIOLATE GENERAL SENTENCING PRINCIPLES, CONSIDER IMPROPER FACTORS AND [DISREGARD] THE SENTENCING GUIDELINES, WHEN IT IMPOSED AN EXCESSIVE SENTENCE OF FOUR TO EIGHT YEARS' INCARCERATION FOR MISDEMEANORS, A SENTENCE FOUR TIMES THE COMMONWEALTH'S RECOMMENDATION OF ONE TO TWO YEARS' INCARCERATION?

> DID NOT THE [TRIAL] COURT ERR AND ABUSE ITS DISCRETION BY FAILING TO GRANT APPELLANT'S MOTION TO DISMISS UNDER PENNSYLVANIA RULE OF CRIMINAL PROCEDURE 600(G) WHERE THE COMMONWEALTH FAILED TO BRING APPELLANT TO TRIAL WITHIN THE PERIOD PROVIDED BY THE RULE AND PRESENTED NO EVIDENCE OF DUE DILIGENCE?

*(Footnote Continued)* _____

filed a post-sentence motion on August 7, 2013. Thereafter, Appellant filed a notice of appeal *pro se* on August 21, 2013, before the court ruled on his counseled post-sentence motion. The court subsequently denied Appellant's counseled post-sentence motion on October 23, 2013. Thus, we will relate Appellant's premature notice of appeal forward to October 23, 2013, to resolve any jurisdictional impediments. ***See id.***

- 5 -

(Appellant's Brief at 4).

In his first issue, Appellant argues he did not knowingly and intelligently waive his right to counsel at trial and sentencing. Appellant claims his constitutional rights and the Pennsylvania Rules of Criminal Procedure were violated when the court permitted Appellant to represent himself without conducting an adequate colloquy. Appellant alleges he did not understand the nature of the charges against him or the elements of each offense, specifically for PIC, POW, and resisting arrest. Appellant also contends he failed to understand the sentencing guidelines, as the court informed Appellant of only the sentencing maximums. Appellant avers the court's deficient colloquy did not insure Appellant understood the benefits of counsel regarding the rules of procedure Appellant would be expected to follow and possible defenses of which Appellant would not be aware. Appellant asserts the court also failed to colloquy Appellant on the need to object for preservation of any issues. Appellant maintains his written waiver of counsel did not overcome the court's inadequate oral colloquy. Appellant concludes this Court should vacate his judgment of sentence or, in the alternative, grant him a new trial. We disagree.

In every criminal case, an accused can waive his Constitutional rights, including the right to counsel, as long as the waiver is intelligently and understandingly made. *Commonwealth v. Sliva*, 415 Pa. 537, 539-40, 204 A.2d 455, 456 (1964). We addressed the right to counsel and right to

self-representation in **Commonwealth v. Houtz**, 856 A.2d 119 (Pa.Super. 2004), where we explained:

> Both the right to counsel and the right to self-representation are guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section Nine of the Pennsylvania Constitution. Deprivation of these rights can never be harmless. The constitutional right to counsel may be waived, but this waiver is valid only if made with knowledge and intelligence.
>
> In order to make a knowing and intelligent waiver, the individual must be aware of both the nature of the right and the risks and consequences of forfeiting it. Moreover, the presumption must always be against the waiver of a constitutional right. Nor can waiver be presumed where the record is silent. The record must show, or there must be an allegation and evidence which shows, that an accused was offered counsel but intelligently and understandingly rejected the offer. Thus, for this Court to uphold such a waiver, the record must clearly demonstrate an informed relinquishment of a known right.

*Id.* at 122 (internal citations and quotation marks omitted). Rule 121 of the

Pennsylvania Rules of Criminal Procedure provides, in relevant part:

> **Rule 121. Waiver of Counsel**
>
> \* \* \*
>
> **(C) Proceedings Before a Judge.** When the defendant seeks to waive the right to counsel after the preliminary hearing, the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel.
>
> **(D) Standby Counsel.** When the defendant's waiver of counsel is accepted, standby counsel may be appointed for the defendant. Standby counsel shall attend the proceedings and shall be available to the defendant for consultation and advice.

Pa.R.Crim.P. 121(C), (D).

To assure a waiver of counsel is knowing, voluntary, and intelligent, the defendant must be colloquied on his understanding of at least the following six elements:

> (1) whether the defendant understands that he has a right to be represented by counsel and the right to free counsel if he is indigent, (2) whether the defendant understands the nature of the charges against him and the elements of each of those charges, (3) whether the defendant is aware of the permissible range of sentences and/or fines for the offenses charged, (4) whether the defendant understands that if he waives the right to counsel he will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules, (5) whether the defendant understands that there are possible defenses to these charges [of] which counsel might be aware, and if these defenses are not raised they may be lost permanently, and (6) whether the defendant understands that, in addition to defenses, the defendant has other rights that, if not timely asserted, may be lost permanently and that if errors occur and are not objected to or otherwise timely raised by the defendant, the objection to these errors may be lost permanently.[1]
>
> > [1] In addition to these six factors, a waiver colloquy must, of course, always contain a clear demonstration of the defendant's ability to understand the questions posed to him during the colloquy….

**Commonwealth v. McDonough**, 571 Pa. 232, 236, 812 A.2d 504, 506-07 (2002) (citing Pa.R.Crim.P. 121(A)(2)). "The trial judge need not literally be the one to pose the questions to the defendant, but the text of Rule 121(C) requires the judge to ascertain the quality of the defendant's waiver." **Houtz, supra** at 123-24.

Instantly, the court discussed Appellant's first issue as follows:

Prior to commencing jury selection, [Appellant's] counsel requested a "***Grazier*** hearing," advising the [c]ourt, without objection, that [Appellant] desired "to waive counsel and proceed *pro se* in this matter." The [c]ourt then colloquied [Appellant] addressing each of the points enumerated in [**McDonough, supra** at 236, 812 A.2d at 506-07].

Despite [Appellant's] then current representation by the Public Defender's office, the [c]ourt reiterated to [Appellant] that he was entitled to an attorney. In response, [Appellant] advised [the court] that he [did not] want the representation of the Public Defender or the appointment of another attorney because he felt "more confident with himself."

After a review of the charges against him, [Appellant] advised that he thought he knew enough about the law to represent himself, that he had studied his case "for four years" and was aware of the elements of the charges against him, stating that he had written notes on the elements of each of the charges against him. [Appellant] also understood that in representing himself that he would be held "to the same standards as a lawyer would be…and that he would have to follow the Rules of Evidence." The [c]ourt appointed the Public Defender as standby counsel to assist [Appellant] during the trial to insure that he accesses to any assistance that he needed at trial. The [c]ourt notes, Appellant was again advised of the charges against him and possible sentences during the colloquy conducted during a break in jury selection.

In addition to reviewing the charges against [Appellant], the [c]ourt also reviewed with him the permissible ranges of sentences that could be imposed in the event of a guilty verdict. This review included both a discussion of the possible statutory sentences, as well as the suggested guideline ranges. It was clear that [Appellant] understood that "if there is a defense, a legal defense or any type of defense, and you don't raise it at trial, then you lose that defense later on." He also understood that in addition to possible loss of specific defenses, he might also lose other

rights. As an example, he was advised that if he was "represented by a lawyer, and that lawyer failed to raise a defense, you could complain about that afterwards. But if you fail to raise that defense, you have no complaint. You can't complain about your own ineffective representation."

Educationally, [Appellant] has obtained a GED. Although [Appellant] had never represented himself in [c]ourt before, it is clear from a review of his criminal record that he is not unfamiliar with the judicial process. Additionally, [Appellant] filed with the [c]ourt a "Motion To Proceed *Pro Se* Pursuant To PA. Const. Art. 1 § 9" dated June 4, 2013, in which he specifically addressed each of the points raised in [**McDonough, supra** at 236, 812 A.2d at 506-07]. The [c]ourt also notes that on [May 10, 2012], [Appellant] filed a *pro se* "Motion to Dismiss Pursuant To Rule 600(G)," in which he set forth each of the charges against him. It is clear that [Appellant's] comment that he had studied his case "for four years," was not glibly made. After careful consideration of the record before it, and having no objection from [Appellant's] counsel, the [c]ourt was and is convinced that [Appellant] understood the questions put to him, understood his rights to representation at trial, understood the charges against him and the possible sentences associated with these charges, and that he had knowingly and intelligently asserted his right to represent himself at trial.

[Appellant], in further support of his supplemental complaint, states "the lower court further erred by failing to appoint counsel when, at the start of trial, [A]ppellant allowed himself to be arraigned on the wrong charge, thereby demonstrating inability to represent himself." [Appellant's] complaint is without merit.

At the commencement of his trial, [Appellant] was initially arraigned by the court crier. The crier made a clerical error in arraigning him on the charge of "using an incapacitation device" pursuant to 18 Pa.C.S.A. § 908.1. This error was immediately called to the attention of the [c]ourt by the Commonwealth and, after a discussion in chambers, [Appellant] was properly arraigned on the correct charge of [POW], 18 Pa.C.S.A. § 908. During [Appellant's] waiver hearing…the Commonwealth, in

- 10 -

amending the Information filed against [Appellant], discussed the distinction between these charges at length, making it clear that it was proceeding on 18 Pa.C.S.A. § 908. In short, this was a clerical error which in no way demonstrated that [Appellant] was unable to adequately defend himself.

Prior to proceeding with his sentencing hearing, [Appellant] again advised the [c]ourt that he wished to continue representing himself with the assistance of standby counsel. The [c]ourt then engaged [Appellant] in a colloquy in order to determine whether…he was prepared to proceed with the hearing. [Appellant] advised the [c]ourt that he was familiar with the sentencing procedures, that he had reviewed the Presentence Investigation Report and that he had discussed this hearing with standby counsel. After reviewing the maximum sentences he was facing, standby counsel advised the [c]ourt that she [did not] know of any reason why [Appellant] could not "handle this on his own." Furthermore, a review of the record reveals that [Appellant's] standby counsel actively assisted [Appellant] at sentencing.

(Trial Court Opinion, filed March 3, 2015, at 5-8) (citations to record omitted). We accept the court's analysis. Moreover, neither Appellant nor standby counsel objected to the adequacy of the court's colloquy. Therefore, any claim regarding Appellant's waiver of counsel is arguably waived. *See Commonwealth v. May*, 584 Pa. 640, 887 A.2d 750 (2005), *cert. denied*, 549 U.S. 832, 127 S.Ct. 58, 166 L.Ed.2d 54 (2006) (reiterating absence of specific and contemporaneous objection waives issue on appeal). In any event, Appellant's first issue merits no relief.

In his second issue, Appellant argues his aggregate sentence of four to eight years' imprisonment is manifestly excessive. Appellant contends the

court imposed consecutive sentences which were either outside the guidelines or in the aggravated range. Specifically, Appellant asserts his sentence of one to two years' imprisonment for resisting arrest was outside the guidelines, his sentence of one and one-half to three years' imprisonment for PIC was in the aggravated range, and his sentence of one and one-half to three years' imprisonment for POW was also in the aggravated range. Appellant claims the court when sentencing him improperly relied on his alleged assault of a police officer, on which he obtained an acquittal. Appellant alleges his aggregate sentence was unduly harsh because Officer Jones' injuries were not severe, and the sentence does not promote rehabilitation. Appellant maintains the court miscalculated his offense gravity score ("OGS") for PIC as a four when the guidelines deemed it a three. As presented, Appellant challenges the discretionary aspects of his sentence. *See Commonwealth v. Prisk*, 13 A.3d 526 (Pa.Super. 2011) (stating generally allegations regarding sentencing court's imposition of consecutive or concurrent sentence challenges discretionary aspects of sentencing); *Commonwealth v. Robinson*, 931 A.2d 15 (Pa.Super. 2007) (stating miscalculation of OGS constitutes challenge to discretionary aspects of sentencing); *Commonwealth v. Anderson*, 830 A.2d 1013 (Pa.Super. 2003) (stating claim that court considered improper factors at sentencing refers to discretionary aspects of sentencing); *Commonwealth v. Lutes*, 793 A.2d 949 (Pa.Super. 2002) (stating claim that sentence is manifestly

excessive challenges discretionary aspects of sentencing).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Sierra*, 752 A.2d 910 (Pa.Super. 2000). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *See* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *See* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). The concise statement must indicate "where the sentence falls in relation to the sentencing guidelines and what particular provision of the code it violates." *Commonwealth v. Kiesel*, 854 A.2d 530, 532 (Pa.Super. 2004).

"The determination of what constitutes a substantial question must be

evaluated on a case-by-case basis." ***Anderson, supra*** at 1018 (citation omitted). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Sierra, supra*** at 912-13. A claim that a sentence is manifestly excessive might raise a substantial question if the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence imposed violates a specific provision of the Sentencing Code or the norms underlying the sentencing process. ***Mouzon, supra*** at 435, 812 A.2d at 627. Generally, an appellant raises a substantial question where he alleges an excessive sentence due to the court's reliance on impermissible factors. ***Commonwealth v. McNabb***, 819 A.2d 54 (Pa.Super. 2003). Likewise, a claim that a sentencing court applied an incorrect OGS raises a substantial question. ***Commonwealth v. Lamonda***, 52 A.3d 365, 371 (Pa.Super. 2012). Nevertheless, any challenge to a sentencing court's imposition of a consecutive sentence, rather than a concurrent one, does not raise a substantial question. ***Prisk, supra*** at 533.

Preliminarily, we observe neither Appellant nor standby counsel objected at sentencing to the OGS for PIC. ***See May, supra***. Furthermore, the argument section of Appellant's brief fails to develop Appellant's claim that the court miscalculated his OGS for PIC. Therefore, Appellant's OGS

claim is waived. *See id.*; Pa.R.A.P. 2119(a)-(b).

Here, the court determined:

> Prior to rendering its decision with regard to [Appellant's] sentence, the [c]ourt, reviewed his Presentence Investigation Report and argument of counsel. The [c]ourt notes that [Appellant] has a history demonstrating a total lack of respect for authority. Most recently, [Appellant] in attempting to avoid arrest physically assaulted Officer Jones and threatened Officer Ruth with a "stun gun." Prior to imposing sentence, the [c]ourt stated for the record:
>
>> **THE COURT**: In addition to his adult record, his nine arrests, four convictions and two commitments with two violations, he also has a juvenile record of three arrests resulting in three adjudications of delinquency. There is no question that [Appellant] will continue to offend. It's just the question of what kind of crime and how long it takes him to get arrested again.
>>
>> Because of his extensive criminal history, a history which is not adequately reflected in the prior record score, and the seriousness of the offense, resisting arrest is what he was convicted of, but it was really an assault on police. Why anybody would think that they could use a stun gun on a police officer and not get shot, I have no idea. [Appellant] was lucky that night.
>>
>> If you attack a police officer, a uniformed police officer, you'll attack anybody. In uniform, armed with a deadly weapon, and nevertheless attacked by [Appellant], it's a serious offense. We're all lucky nobody was seriously injured that night.

(Trial Court Opinion, filed March 28, 2014, at 15) (citations to record omitted). The court later continued:

> [Appellant] misstates the record. Prior to imposing sentence it was agreed that the [OGS] for both PIC [and] POW, graded as misdemeanors of the first degree, was 4,

- 15 -

with the guidelines recommending a sentence range of 6—16 months, ±3 months. Each of these convictions carried a maximum sentence of five years. On the charge of Resisting Arrest, graded as misdemeanors of the second degree, the OGS is 2, with the guidelines recommending a sentence range of RS-6 months, ±3 months. Although the court did not review this particular range it did advise [Appellant] that the maximum statutory sentence was two years. On the charge of Possession of Marijuana, an ungraded misdemeanor, the OGS is 1, with the guidelines recommending a sentence range of RS-4 months, ±3 months, with a maximum sentence of 6 months.

[Appellant's] sentences of 18 to 36 months on the PIC [and] POW convictions clearly fall within the guideline ranges. Although [Appellant's] sentence of 12 to 24 months on the charge of Resisting Arrest represented the maximum, it is only 3 months greater than the guidelines recommendation. As previously discussed, the [c]ourt stated its reasons for these sentences on the record.

As to the charge of Possession of Marijuana, the [c]ourt made a determination of guilt without further penalty. In view of the seriousness of the other crimes and the sentences imposed, the [c]ourt felt it was appropriate to depart from the guidelines. Since [Appellant] clearly benefitted from this determination and the Commonwealth raised no objection, the [c]ourt did not feel it was necessary to explain its decision further.

Lastly, [Appellant] was convicted of both PIC, which prohibits the possession of any instrument of crime with intent to employ it criminally, and POW, which prohibits the possession of an offensive weapon. As the definitions of these crimes contain separate and distinct elements, they do not merge for sentencing purposes. *Commonwealth v. Baldwin*, 604 Pa. 34, 985 A.2d 830 (2009)[.] Therefore, sentencing [Appellant] to serve consecutive sentences on these convictions does not, as [Appellant] implies, constitute double counting under the sentencing guidelines. As previously discussed, the Superior Court of Pennsylvania, in *Commonwealth v. Mastromarino*, 2 A.3d 581, 586[-87] (Pa.Super. 2010), reiterated…"Long standing precedent of this Court

- 16 -

recognizes that 42 Pa.C.S.A. § 9721, affords the sentencing [court] discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." The mere fact that these convictions arise from the "same conduct" does not prohibit the [c]ourt from exercising its discretion in imposing consecutive sentences. This is especially true where, as in the instant matter[,] [Appellant's] extensive criminal history is not adequately reflected in the prior record score and where his current convictions arose out [of] his assault on a uniformed police officer with a stun gun while resisting arrest.

(Trial Court Opinion, filed on March 3, 2015, at 9-10) (citations to record omitted). We accept the court's analysis. Moreover, Appellant's claim that the sentencing court improperly considered his attack of Officer Jones, despite Appellant's acquittal of aggravated assault, does not merit relief. *See Commonwealth v. Bowers*, 25 A.3d 349, 356 (Pa.Super. 2011) (declaring sentencing court may consider arrests that result in acquittals as long as court is aware of acquittal). Furthermore, the court had the benefit of a presentence investigative ("PSI") report at sentencing. Therefore, we can presume the court considered the relevant facts when sentencing Appellant. *See Commonwealth v. Tirado*, 870 A.2d 362 (Pa.Super. 2005) (stating where sentencing court had benefit of PSI, law presumes court was aware of and weighed relevant information regarding defendant's character and mitigating factors). Accordingly, Appellant's second issue merits no relief.

In his final issue, Appellant argues his Rule 600 motion to dismiss should have been granted because it took 673 days to bring Appellant to

- 17 -

trial. Appellant contends the Commonwealth failed to bring him to trial within the required 365 days, or to present evidence of due diligence. Appellant asserts his criminal complaint was filed on May 13, 2009, and his trial did not begin until June 10, 2013, due to delays that included necessary police officers being unavailable or failing to appear at several listings, Appellant not being brought to court on multiple occasions, and the Commonwealth's failure to insure the earliest possible date of trial. Appellant also claims the court improperly applied the wrong Rule 600. Appellant maintains defense counsel and the Commonwealth agreed to include the 234 days between September 30, 2011 and May 21, 2012, in the Rule 600 calculation. Appellant concludes this Court should reverse the denial of his Rule 600 motion and discharge his case. We disagree.

"In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." *Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa.Super. 2004) (*en banc*), *appeal denied*, 583 Pa. 659, 875 A.2d 1073 (2005).

> The proper scope of review…is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.
>
> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated,

consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

\* \* \*

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime.

*Id.* at 1238-39 (internal citations and quotation marks omitted).

The version of Rule 600 in effect at the relevant time of Appellant's case provided, in pertinent part:

**Rule 600.  Prompt Trial**

\* \* \*

[(A)](3)  Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

\* \* \*

(C) In determining the period for commencement of trial, there shall be excluded therefrom:

\* \* \*

(3)  such period of delay at any stage of the proceeding as results from:

(a)   the unavailability of the defendant or the defendant's attorney;

- 19 -

> (b) any continuance granted at the request of the defendant or the defendant's attorney.

Pa.R.Crim.P. 600(A)(3), (C)(3) (prior version).[4] "Rule 600 generally requires the Commonwealth to bring a defendant on bail to trial within 365 days of the date the complaint was filed." *Hunt, supra* at 1240. A defendant on bail after 365 days, but before trial, may apply to the court for an order dismissing the charges with prejudice. *Id.* at 1240-41. To obtain relief, however, a defendant must have a valid Rule 600 claim at the time he files his motion for relief. *Id.* at 1243.

"The mechanical run date is the date by which the trial must commence under Rule 600." *Commonwealth v. McNear*, 852 A.2d 401, 406 (Pa.Super. 2004).

> It is calculated by adding 365 days (the time for commencing trial under Rule 600) to the date on which the criminal complaint is filed. The mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant. Once the mechanical run date is modified accordingly, it then becomes an adjusted run date.

*Id.* (quoting *Commonwealth v. Lynn*, 815 A.2d 1053, 1056 (Pa.Super. 2003)).

In the context of Rule 600, "excludable time" is differentiated from "excusable delay" as follows:

> "Excludable time" is defined in Rule 600(C) as the period

_____

[4] A new version of Rule 600 went into effect on July 1, 2013.

of time between the filing of the written complaint and the defendant's arrest, …any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b) any continuance granted at the request of the defendant or the defendant's attorney. "Excusable delay" is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

*Commonwealth v. Brown*, 875 A.2d 1128, 1135 (Pa.Super. 2005), *appeal denied*, 586 Pa. 734, 891 A.2d 729 (2005) (quoting *Hunt, supra* at 1241).

Even where a violation of Rule 600 has technically occurred, we recognize:

[T]he motion to dismiss the charges should be denied if the Commonwealth exercised due diligence and…the circumstances occasioning the postponement were beyond the control of the Commonwealth.

Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a **reasonable** effort has been put forth.

Reasonable effort includes such actions as the Commonwealth listing the case for trial prior to the run date to ensure that [defendant] was brought to trial within the time prescribed by Rule [600].

*Brown, supra* at 1138 (quoting *Hunt, supra* at 1241-42) (emphasis in original).

In the present case, the Commonwealth filed the criminal complaint against Appellant on May 13, 2009. Therefore, the initial Rule 600 mechanical run date was May 13, 2010. The court disposed of Appellant's

- 21 -

Rule 600[5] claim as follows:

> At the hearing held on January 15, 2013, to consider [Appellant's Rule 600] motion, counsel were able to agree as to most of the relevant dates to be ruled either excludable or excusable. The [c]ourt will, therefore, limit its discussion to those dates in dispute.
>
> The first period of time at issue is the 97 day period between 1/8/2010—3/3/2010. Counsel agreed that the record shows the matter "was marked ready, not reached by the [c]ourt." Furthermore, the record also reveals that the hearing judge ruled this time to be excusable. "Judicial delay can support the grant of an extension of the Rule [600] run date." [**Brown, supra** at 1135.] It is clear from the record that the unavailability of a courtroom was beyond the control of the Commonwealth and that both [Appellant] and the Commonwealth were prepared to go forward but for the unavailability of a [courtroom]. This time is, therefore, …not included in the Rule 600 calculation.
>
> The next period of time to be considered is the 177 day period between 3/3/2010—6/3/2010 and 6/3/2010—8/27/2010. The [c]ourt finds these periods of time excusable. The record indicates that the Commonwealth's police officer was injured on duty (IOD) and unavailable to testify on both dates. The Commonwealth's file also reveals that as of 6/3/2010[,] the officer was cleared to return to duty the following week on 6/10/2010. However, the next hearing [was not] scheduled until 8/27/2010, the earliest possible date available. The prosecution has no control over the inability of a police officer, injured on duty, to appear and testify. **Commonwealth v. Anderson**, 959 A.2d 1248 (Pa.Super. 2008)[.]
>
> The next period of time at issue is the 85 day period between 1/18/2011—1/27/2011, 1/27/2011—3/22/2011

---

[5] The court incorrectly considered the new Rule 600 in analyzing Appellant's claim. Nevertheless, the pertinent portions of the rule are substantially the same as the prior rule.

and 3/22/2011—4/13/2011. The [c]ourt finds these periods of time to be excusable. The record indicates that on both 1/8/2011 and 3/22/2011[,] [Appellant] was not brought to Philadelphia from his place of incarceration at SCI Huntington. As [the] Superior Court has held: "The prosecutor cannot be charged with responsibility for the delay because the system seems unable to find, transport, and house defendants in their custody. Unfortunately, writs issued for defendants in state custody are routinely cancelled and defendants are not brought to court because of overcrowding." *Commonwealth v. Mines*, 797 A.2d 963, [965] (Pa.Super. 2002)[.] Coincidentally, on the day of the hearing to consider his Rule 600 motion, [Appellant] was yet again unavailable to attend because he had not been brought to court. The record also indicates and counsel agree[d] that, through an act of God, the [c]ourt was closed on 1/27/2011, necessitating yet another continuance. The [c]ourt takes judicial notice that it is completely beyond the ability of the Commonwealth to control the [vagaries] of the weather.

\* \* \*

Nevertheless, [c]ounsel agreed that…judicial delay can support an extension pursuant to Rule 600. In addition, [the] Superior Court reaffirmed long standing Pennsylvania jurisprudence that a judicial delay of 30 days or less does not justify dismissal under Rule 600. *Commonwealth v. Preston*, 904 A.2d 1 (Pa.Super. 2006)[.] "As our Supreme Court has noted, short delays beyond the adjusted run date of a procedural rule do not seriously implicate a defendant's Sixth Amendment right to a speedy trial…nor do they provide a disincentive for states to remedy court congestion. …" [*Id.* at 15.]

The underlying consideration behind any decision pursuant to Rule 600, in balancing the competing principals of protecting a defendant's right to speedy [trial] and protecting society's right to effective prosecution prior to dismissal of charges, is the exercise of due diligence by the Commonwealth. *Commonwealth v. Bradford*, 46 A.3d 693 (Pa. 2012) "In the absence of actual misconduct on the part of the Commonwealth specifically calculated to evade the fundamental speedy trial rights of an accused,

the applicable speedy trial rule must be construed in a manner 'consistent with society's right to punish and deter crime.'" **Preston,** [**supra** at 10.] At the outset of the hearing on [Appellant's] motion, the [c]ourt queried: "Let's put it this way, 600(G) has built into it Commonwealth's due diligence, right?"

… It is clear that throughout the protracted progression of the matter, [Appellant] vacillated back and forth between whether to proceed with a waiver trial or a jury trial, accounting for a number of continuances and rescheduling. The docket reflects that on 9/16/2011[,] [Appellant] once again requested a jury trial necessitating yet another continuance to 9/30/2011. On 9/30/2011, the [c]ourt was not sitting, necessitating yet another continuance of 75 days to 12/14/2011[,] for a status hearing. In addition to the continuance, [Appellant's] trial was scheduled for 5/21/2012. As noted above, the Commonwealth has no control over the [c]ourt's scheduling nor is there any evidence the Commonwealth was not prepared to proceed. On 12/14/2011[,] the docket indicates an order granting a continuance was entered and the trial date remained as 5/21/12. Since this was originally listed as a status hearing, the [c]ourt assumes that this continuance was a mere formality attributable to neither party.

*     *     *

The [c]ourt also notes that the record reflects this matter has been assigned to numerous trial judges for disposition. This is attributable in part to the "reorganization of the Philadelphia criminal court system by geographical zone." **Commonwealth v. Armstrong**, 74 A.3d 228, 237 (Pa.Super. 2013)[.] Whether…this time is chargeable to the Commonwealth begs the question of its due diligence. The [c]ourt finds, in view of the totality of the circumstances, that the Commonwealth has met its burden and acted with due diligence.

The [c]ourt must also consider whether [Appellant] was prejudiced by the protracted progression of this matter. [In] **Commonwealth v. Clark**, 847 A.2d 122 (Pa.Super. 2004)[,] [w]hen the [c]ourt inquired of counsel; "So what's the prejudice to your client?" Counsel responded,

- 24 -

> "I don't think the Commonwealth has a desire…to bring this case to trial." As in **Clark**, [Appellant] was incarcerated at SCI Huntington serving a sentence on an unrelated conviction during the pendency of his trial. The [c]ourt finds that the Commonwealth acted with due diligence and that [Appellant] did not suffer prejudice sufficient to warrant the dismissal of the charges against him pursuant to Rule 600.

(Trial Court Opinion, filed March 28, 2014, at 7-12) (some internal citations omitted). We accept the court's analysis. Moreover, excluding the delays the record does not clearly attribute to either party, Appellant did not have a viable Rule 600 claim when he filed his motion to dismiss on October 1, 2012. Thus, Appellant's Rule 600 motion was premature, and Appellant's final issue merits no relief. **See Hunt, supra**. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge Panella joins this memorandum.

Judge Shogan files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/14/2016